USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/12/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
FERDINAND SEGARRA,                              :
                                                :
                                                :
                        Plaintiff,              :
                                                :
         -v-                                    :      1:18-cv-8135-GHW
                                                :
DELTA AIRLINES, INC., JOHN DOES 1-10,           :      MEMORANDUM OPINION AND
JANE DOES 1-10, XYZ CORPORATIONS,               :             ORDER
                                                :
                        Defendants.             :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Seventy-nine-year-old Ferdinand Segarra ("Segarra") tripped and fell while disembarking from one of Defendant's airplanes in Puerto Rico. He sued Delta Airlines, Inc. ("Delta"), claiming that Delta's negligence in aligning the jet bridge and the plane caused his injury. When discovery closed, Delta moved for summary judgment. Because Delta has entirely failed to support its contention that it is entitled to judgment as a matter of law, its motion for summary judgment is DENIED.

**I.   BACKGROUND**[1]

This is an ordinary trip and fall case. Accordingly, the facts are not particularly dramatic: Segarra tripped, fell, and is suing Delta as a result.

On August 25, 2016, Ferdinand Segarra and his sister boarded an airplane operated by Delta at John F. Kennedy International Airport in Queens, New York headed for Muñoz Marín International Airport in San Juan, Puerto Rico to visit their brother. Dep. of Ferdinand Segarra, Dkt. No. 59-3, ("Segarra Dep."), at 26:9−27:7, 59:10−12. While disembarking in Puerto Rico,

---

[1] On summary judgment, the Court views the facts in the light most favorable to the non-moving party. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). Because this is Delta's motion, the following summary is based on undisputed facts, where they exist, and on Segarra's version of events where the facts are disputed. The Court has identified the disputed facts.

Segarra fell and landed on his left knee.  Segarra Dep. at 42:14–45:10.

Segarra remained in Puerto Rico for nine days following his accident.  *See* Segarra Dep. at 57:19–22.  He self-medicated with Tylenol.  *See* Segarra Dep. at 58:12–14.  After returning to New York, Segarra consulted a doctor, and learned that he had broken his knee.  *See* Segarra Dep. at 61:15–24.

Several facts remain in dispute.  For the purpose of this motion, the most important outstanding question involves identifying the underlying cause of Segarra's accident.  According to Segarra, he fell because his foot landed in a gap between the jet bridge and the plane, *see* Pl.'s Opp'n, Dkt. No. 59-2 ("Opp'n"), at 2–3; according to Delta, Segarra's left foot caught on part of the plane, causing him to trip, *see* Def.'s Summ. J. Mot., Dkt. No. 51-3 ("Mot."), at 3.  The parties also disagree as to whether the jet bridge was properly attached to the plane before passengers were permitted to disembark in San Juan.  Delta asserts that its standard operating procedure ensured that it was, and that passengers would not have been permitted to exit the plane if the jet bridge was improperly aligned.  *See* Mot. at 3; Dep. of Michael Luciano, Dkt. No. 51-8 ("Luciano Dep."), at 23:18–25, 24:8–18; Dep. of Melissa Reid, Dkt. No. 59-5 ("Reid Dep."), at 21:4–22:14; 23:2–6.  Plaintiff disputes that Defendant followed the standard operating procedures the day of Segarra's accident. *See* Pl.'s Rule 56.1 Statement, Dkt. No. 59-1 ¶¶ 19–23; Luciano Dep. at 28:4–19.

On July 22, 2018, Segarra sued Delta in state court, alleging that he suffered severe and permanent injuries as a result of Defendant's negligence.  *See* Compl., Dkt. No. 1-2, ¶¶ 27–28. Delta removed this action to federal court under 28 U.S.C. § 1441.  *See* Dkt. No. 1.  After discovery closed, Delta moved for summary judgment.  *See* Dkt. No. 51.  Plaintiffs opposed Delta's motion on December 14, 2019.  *See* Dkt. No. 59.  And Delta replied on December 30, 2019.  *See* Def.'s Reply, Dkt. No. 60 ("Reply").

    **II.**    **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and he or she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (quotation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.

1996). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quotation omitted).

Still, "[t]he possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present." *Gibson v. Am. Broad. Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989).

### III. ANALYSIS

Delta asserts that summary judgment in this case is appropriate for four reasons: Segarra's claim is barred by Puerto Rico's statute of limitations, Segarra's claim is preempted, Segarra's inability to identify the defect that caused him to fall is fatal to his negligence claim, and Defendant had no duty to warn Segarra of an open and obvious condition that was not inherently dangerous. For the reasons described below, none of these arguments are persuasive.

#### A. Statute of Limitations

Delta has presented no explanation for why Puerto Rico's statute of limitations would apply here. Federal courts sitting in diversity apply the forum state's statutes of limitations. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945). And "New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998); *see also Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015). New York's borrowing statute provides an exception to this general rule:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, *except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply*.

N.Y. C.P.L.R. § 202 (emphasis added). In other words, New York has a policy of "always giving its residents the benefit of New York's own statute of limitations[.]" *Gerena v. Korb*, 617 F.3d 197, 206

(2d Cir. 2010); *see also Ledwith v. Sears Roebuck & Co.*, 660 N.Y.S.2d 402, 405 (1st Dep't 1997). Segarra is a New York resident,[2] and brought this claim in July 2018, just short of two years after his fall in August 25, 2016. And New York's statute of limitations for personal injury claims is three years. N.Y. C.P.L.R. § 214(5).

Regrettably, the parties clearly did not appreciate the distinction New York courts draw between substantive and procedural questions when engaging in choice-of-law analyses. Classifying a statute is a "key analytic step because" New York courts apply "the law of the forum" to matters of procedure, whereas "matters of substantive law fall within the course charted by choice of law analysis[.]" *See Tanges v. Heidelberg North America, Inc.*, 710 N.E.2d 250, 252–253 (1999). And New York courts regard statutes of limitations as procedural. *See id.* at 253; *see also Gerena,* 617 F.3d at 206 ("New York still adheres to the traditional substantive/procedural dichotomy in its choice of law analysis and generally classifies statutes of limitations as procedural, except for those limitations periods which it designates as statutes of repose.").[3] But neither Delta nor Segarra cited any of these cases, or even referenced New York's borrowing statute. Delta's brief asked the Court to apply New York's "interest analysis" test to determine "which of two competing jurisdictions has the greater interest in having its law applied in the litigation." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521 (1994). And Segarra followed that primrose path; rather than engage in any independent research and present the Court with the correct analytic rubric, Plaintiff dutifully parroted the exact same cases.

All in all, Segarra took almost two years to file his claim. Luckily, New York permits him three.

### B. Preemption

---

[2] The parties did not address Segarra's residency in their Rule 56.1 statements, but neither party seems to dispute Plaintiff's New York residency. *See, e.g.*, Mot. at 6; Opp'n at 5; Reply 3–4.
[3] No party has asserted that New York's statute of limitations for personal injury claims is a statute of repose.

Delta has not met its burden in demonstrating either that no genuine dispute of material fact exists, or that Plaintiff's claim is preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1), as a matter of law.

Until 1978, the Federal Aviation Act ("FAA") "permitted passengers to pursue common law or state statutory remedies against airlines." *Rombom v. United Air Lines, Inc.*, 867 F. Supp. 214, 218 (S.D.N.Y. 1994). In 1978, the ADA amended the FAA, and explicitly provided that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation[.]" 49 U.S.C. § 41713(b)(1). This policy ensured that "states do not eviscerate federal regulations by promulgating regulations of their own." *Peterson v. Cont'l Airlines, Inc.*, 970 F. Supp. 246, 249 (S.D.N.Y. 1997). Still, the Supreme Court has cautioned against finding preemption where a state law affects an air carrier's services in "too tenuous, remote, or peripheral a manner." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992) (quotation omitted).

In *Rombom v. United Air Lines*, 867 F. Supp. 214 (S.D.N.Y. 1994), then-District Judge Sotomayor articulated a three-part test to determine whether the ADA preempts a common law tort claim:

> The threshold inquiry in deciding whether state claims against an airline are preempted by Section 41713 is whether the activity at issue is an airline service. . . . If . . . the activity at issue implicates an airline service, the Court must then address the second prong: Whether plaintiff's claims affect the airline service directly as opposed to "tenuously, remotely, or peripherally." If the state claims have only an incidental effect on the airline service, there is no preemption. The third prong of the preemption inquiry focuses on whether the underlying tortious conduct was reasonably necessary to the provision of the service. In other words, Section 41713 "cannot be construed in a way that insulates air carriers from liability for injuries caused by outrageous conduct that goes beyond the scope of normal aircraft operations." If, in contrast, the service was provided in a reasonable manner, then preemption is appropriate.

*Peterson*, 970 F. Supp. at 250 (citations omitted). Strangely, even though most courts in this circuit to consider this preemption question employ this framework, neither Delta nor Segarra referenced it.

6

*See, e.g.*, *Fawemimo v. Am. Airlines, Inc.*, No. 14-CV-4510 (PKC), 2017 WL 398387, at *3 (S.D.N.Y. Jan. 30, 2017), *aff'd*, 751 F. App'x 16 (2d Cir. 2018), *Doe v. Delta Airlines, Inc.*, 129 F. Supp. 3d 23, 35 (S.D.N.Y. 2015) (collecting cases); *Bary v. Delta Airlines, Inc.*, No. CIV.A.CV-02-5202(DGT), 2009 WL 3260499, at *11 (E.D.N.Y. Oct. 9, 2009), *aff'd*, 553 F. App'x 51 (2d Cir. 2014); *Farash v. Continental Airlines, Inc.*, 574 F. Supp. 2d 356, 363 (S.D.N.Y. 2008) (Sullivan, J.), *aff'd*, 337 F. App'x 7 (2d Cir. 2009); *Weiss v. El Al Israel Airlines, Ltd.*, 471 F. Supp. 2d 356, 361 (S.D.N.Y. 2006); *Rombon*, 867 F. Supp. at 221–22. [4]

Plaintiff's tort claims arise from Delta's alleged failure to properly align the jet bridge with the plane. *See* Opp'n at 8−9. These claims directly implicate an airline service—deplaning. *Cf. Air Transp. Ass'n of Am., Inc. v. Cuomo,* 520 F.3d 218, 223 (2d Cir. 2008) (per curiam) (noting that "service" includes "matters such as boarding procedures, baggage handling, and food and drink"). Only the third *Rombom* prong is seriously at issue here: namely, whether the "underlying tortious conduct," the alleged misalignment of the jet bridge, "was reasonably necessary to the provision of the service." *Rombom,* 867 F. Supp. 214 at 222. This third prong "exempts from preemption only those actions classifiable as 'outrageous or unreasonable.'" *Lozada v. Delta Airlines, Inc.*, No. 13 Civ. 7388 (JPO), 2014 WL 2738529, at *4 (S.D.N.Y. June 17, 2014) (quoting *Rombom*, 867 F. Supp. at 223). In other words, a claim that meets all three factors is, by default, preempted, unless the allegedly tortious conduct is outrageous or unreasonable.

The Court cannot grant Delta's motion for summary judgment. For one, Delta disputes that Segarra fell in the gap between the plane and the jet bridge, asserting instead that Segarra fell on a

---

[4] For the record, the parties *also* did not cite the alternative approach developed by Judge Scheindlin in *Trinidad v. American Airlines, Inc.*, 932 F. Supp. 521, 526 (S.D.N.Y. 1996). Less frequently employed by district courts, that test asks courts to first "examine the totality of the circumstances and determine whether the action at issue is commonly related to air travel" and will not apply ADA preemption "even to actions that are regularly performed, if the plaintiff alleges that the action was performed in a negligent manner and resulted in personal injury." *Weiss*, 471 F. Supp. 2d at 360. Even if the Court employed Judge Scheindlin's test, its analysis would come out the same way—here, Segarra claims that Delta negligently aligned the jet bridge with the plane the day of his accident, causing his fall.

7

part of the plane. This, Delta asserts, vitiates Segarra's claim, because cabin safety-design measures "are a subject of federal regulatory guidance and implicate federal interests" and are expressly preempted by the ADA. *Fawemimo*, 2017 WL 398387, at *3. But on a motion for summary judgment, the movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Holcomb*, 521 F.3d at 137 (citing *Celotex*, 477 U.S. at 323). The parties dispute *why* Segarra fell. This is certainly a material fact that may influence whether or not his claim is preempted by the ADA and highlights the fact that summary judgment is inappropriate here.

Resolving all ambiguities in favor of Plaintiff, as the Court must, Segarra's tort claims are not necessarily preempted. Plaintiff asserts that Delta negligently misaligned the jet bridge the day that Segarra deplaned in Puerto Rico, causing him to slip and fall in the gap between the two. *See* Opp'n at 8–9. This fact implicates the third *Rombom* prong and requires the Court to determine whether the underlying tortious conduct was "outrageous or unreasonable," exempting the tort claim from preemption.[5]

It is possible Delta could have presented the Court with some evidence that any misalignment was neither outrageous nor unreasonable as a matter of law. Delta chose not to. Instead, Delta approached this case assuming that the Court would agree that two facts—still in dispute—were true: namely, that Segarra tripped on a part of the plane while exiting, and that all standard operating procedures were followed the day of the accident. But the record does not support this reading in this context, where the Court is required to accept Plaintiff's version of

---

[5] Courts have found a wide spectrum of activities unreasonable: shooting a passenger to keep him quiet, *see Rombom*, 867 F. Supp. at 222, ordering the arrest of a passenger for being intoxicated before boarding, *see Doe*, 129 F. Supp. 3d at 37, refusing to transport passengers because of a charter airline's unpaid debt, *see In re Nigeria Charter Flights Contract Litg.*, 520 F. Supp. 2d 447, 470 (S.D.N.Y. 2007), and "claims of racial discrimination, assault, battery[,] and intentional infliction of emotional distress." *Rombom*, 867 F. Supp. at 222 (citing *Doricent v. Am. Airlines*, Civ. A. No. 91-12084Y, 1993 WL 437670 at *5 (D. Mass. Oct. 19, 1993)). The Court declines to opine, on this record, on whether permitting passengers to disembark from a plane where a jet bridge is improperly aligned falls within this spectrum of unreasonable conduct.

8

disputed facts. And willfully ignoring these disputes means that Delta spilled much ink uselessly reframing Segarra's claim as a "state law negligence claim, which is premised on a purported negligent deplaning procedure and/or a dangerous/defective design of the plane" and "is preempted by federal law," Reply at 6; *see also* Mot. at 9, even though Segarra specifically "alleges the accident happened because the Defendant did not properly place the jet bridge against the aircraft and not because of the design of [sic] jet bridge or the aircraft," Opp'n at 1.

Delta also seems to insist that *all* deplaning-related torts are inherently preempted by the FAA and ADA. *See* Mot. at 8. This is contrary to clear Second Circuit precedent. *See Air Transp. Ass'n*, 520 F.3d at 225 (noting that the Second Circuit has "acknowledged that the FAA does not preempt all state law tort actions"). Perplexingly, the unpublished Second Circuit case that Delta cites in support of its proposition, *Fawemimo v. Am. Airlines, Inc.*, 751 F. App'x 16 (2d Cir. 2018), unequivocally says as much in distinguishing between a complaint that attacks an airplane's seating design and a complaint that alleges only the negligent installation or maintenance of the plaintiff's specific seat:

> [Section] 41713(b)(1) preempts claims that challenge airline policies and could potentially create inconsistent standards between states, while leaving room for personal injury actions that allege an airline was negligent in carrying out its policy. *See* [*Hodges v. Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir. 1995)]; *see also Air Transp. Ass'n*, 520 F.3d at 225 (acknowledging that "the FAA does not preempt all state law tort actions"). [Plaintiff's] complaint argued that the design of the aircraft's monitors and seats was dangerous. These claims pertain to an airline policy, rather than the negligent installation or maintenance of her specific monitor or seat, and they are therefore preempted under *Hodges*.

*Id.* at 19.

Again, it is entirely possible that a detailed review of the record may reveal that there is no genuine dispute of material fact that any misalignment of the jet bridge here was either outrageous or unreasonable, thereby preempting Plaintiff's claim. But reviewing the record and locating the applicable facts and law supporting Delta's position is Delta's job—not the Court's. "Uncertainty as

9

to the true state of any material fact defeats" a motion for summary judgment, *Gibson*, 892 F.2d at 1132, and "practical constraints on the time of a judge make it impossible for the judge to examine a record of even moderate size with such finitude as to be both exhaustive and exhausting. Judges are not ferrets!" *Nicholas Acoustics & Specialty. Co. v. H & M Const. Co.*, 695 F.2d 839, 846–47 (5th Cir. 1983).

Delta failed to engage with the governing legal standards or present undisputed facts that would have supported a favorable finding by the Court. Thus, the Court cannot conclude as a matter of law that Plaintiff's claim is preempted.

### C. Identification of the Cause of Segarra's Fall

Delta has also failed to demonstrate that Segarra was unable to identify the cause of his fall. To prevail on a negligence claim under New York law,[6] a plaintiff must demonstrate that the defendant's conduct was the proximate cause of his or her injury. *See Solomon v. City of New York,* 66 N.Y.2d 1026, 1027 (1985). Thus, "[i]n a slip and fall case, a defendant may establish its prima facie entitlement to judgment as a matter of law by submitting evidence that the plaintiff cannot identify the cause of his or her fall without engaging in speculation." *Dixon v. Superior Discounts & Custom*

---

[6] As discussed above in Part III.A, both parties failed to appreciate the distinction New York courts make between substantive and procedural choice-of-law questions. One ramification of this error is that Delta incorrectly assumed this Court would apply New York's tort law if it determined that Puerto Rico's statute of limitations did not bar Segarra's claim. As a result, Delta spent much of its brief arguing that it is entitled to summary judgment because Segarra could not prevail on his negligence claim under New York law. Constrained by this decision, the Court evaluates Delta's arguments only within the context of New York law. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (when "parties' briefs assume that New York substantive law governs the issues . . . such implied consent is, of course, sufficient to establish the applicable choice of law." (quotation omitted)). To be clear, the Court is not finding that New York tort law applies in this case. Indeed, "[i]n the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." *Padula*, 84 N.Y.2d at 521. If the conflict involves a rule that is "conduct-regulating," the law of the place of the tort generally governs, *id.* at 522, but if the conflict involves a rule that is "loss allocating," the choice of law is governed by the principles articulated in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972). *See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 50 (2d Cir. 2005). Now that they are alerted to it, the Court expects the parties to thoroughly brief the substantive choice-of-law question in connection with their pre-trial submissions.

*Muffler ex rel. Jones*, 988 N.Y.S.2d 817, 818 (4th Dep't 2014) (quotation omitted) (collecting cases).

In its motion, Delta very convincingly paraphrases a portion of Segarra's deposition, stating that "plaintiff could not identify the defect that caused his [sic] to trip and fall. Rather plaintiff simply states that 'something' caused him to fall. He could not identify the defect, other than to testify that some unspecified 'part' of the plane caused him tofall [sic]." Mot. at 11.[7] But even the most cursory review of Segarra's deposition transcript makes obvious that Delta's summary is, at best, inaccurate—at worst, it is disconcertingly misleading. At no point in time did Segarra state that he could not identify what part of the plane caused his fall. In fact, he specifically testified otherwise:

> Q. That's my question now, was it the jet bridge, the thing that came and met the plane or did you fall inside the plane?
> A. The plane and the gate are together so in between the two of them.
> Q. Did your leg go in the gap between the jet bridge and the plane?
> A. I think so. That's why I fall [sic].

Segarra Dep. at 44:18−25. That testimony is sufficient to withstand Delta's motion. After all, at trial, the jury would not need to speculate that Delta's alleged negligence proximately caused Plaintiff's injury to find for Segarra—the jury would just need to credit Segarra's testimony.

---

[7] In its motion, Delta did not bother to cite to the precise section of the deposition testimony it was paraphrasing, but the Court assumes that Defendant was relying on the testimony from the Segarra deposition that it excerpted, in part, in its Rule 56.1 Statement:
> Q. Did there come a point in time when you stepped off the plane and tried to step on the jet bridge?
> A. When I stepped off I got caught on something. I don't know if it was my foot, and I fail [sic] on the floor.
> Q. Your foot got caught on something?
> A. Yes.
> Q. What did it get caught on? Did it get caught on something inside the plane stepping out or something else?
> A. Stepping out.
> Q. Was it part of the plane—
> A. Yes.
> Q —or was it part of the jet bridge?
> A. No, part of the plane.

Segarra Dep. at 42:11−43:2.

Further, the cases Delta cites are inapposite—they mostly involve plaintiffs who explicitly stated during their depositions that they could not identify the cause of their fall. *See Dilorenzo v. S.I.J. Realty Co.,* 981 N.Y.S.2d 590, 591 (2d Dep't 2014) (plaintiff claimed a wet floor caused her fall but admitted that she "did not know when the floor had most recently been cleaned and did not know whether the floor was wet when she fell"); *Rivera v. Nazzaro P'ship*, 995 N.Y.S.2d 747, 748 (2d Dep't 2014) (in her deposition, plaintiff "admitted to not knowing what her foot had been caught on, or what caused her to fall"); *Zaldivar v. St. Rita's Roman Catholic Church*, 4 N.Y.S.3d 64, 65 (2d Dep't 2015) (plaintiff was "unable to identify what caused her to fall" at her deposition); *Ash v. City of New York*, 972 N.Y.S.2d 594, 596 (2d Dep't 2013) (plaintiff testified that she "did not know why she fell").[8]

In contrast, Segarra's testimony provides a sufficient basis for his claim to survive summary judgment. He identified the gap between the jet bridge and the plane as the cause of his fall and resulting injury. *See Kelly v. Mall at Smith Haven, LLC*, 48 N.Y.S.3d 726, 728 (2d Dep't 2017) (plaintiff's testimony was sufficient when he testified that as he attempted to step onto the curb, he felt his right foot get "caught in the crack of the curb"—adequately "identify[ing] the chip in the curb as the cause of his alleged fall"); *Melini v. 71st Lexington Corp.*, No. 07 Civ. 701(JCF), 2009 WL 413608 at *8 (S.D.N.Y. 2009) (testimony that a plaintiff thinks he slipped "because of the surface. It

---

[8] In two of the other cases that Delta cites—specifically *Siegel v. City of New York*, 928 N.Y.S.2d 1 (1st Dep't 2011) and *Flynn v. 835 6th Ave. Master L.P.*, 969 N.Y.S.2d 13 (1st Dep't 2013), New York state courts granted summary judgment after determining that a plaintiff's vague or inconsistent testimony was insufficient to identify the cause of his fall. Delta did not explicitly ask the Court to make a credibility assessment here, but reading between the lines, the Court surmises that Delta would prefer that the Court draw a similar conclusion, and find Segarra's testimony too contradictory to survive summary judgment. But again, on summary judgment, a district court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (internal quotation marks and citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys*, 426 F.3d at 553 (quotation omitted). Segarra's deposition transcript is not a bastion of clarity. That, however, is mostly due to Delta's lawyering choices during the deposition. As a practice point, it is often helpful for an attorney to wait until a deponent has answered one question before asking another. And if an answer is unclear or imprecise, it is often useful for a lawyer to pose the question again, rather than moving on.

was steep and smooth. It didn't hold me, I guess" is sufficient because plaintiff "clearly outlined the reason he thinks that he fell, even if not with absolute certainty").

### D. Duty to Warn

Viewing the evidence in the light most favorable to Segarra and drawing all reasonable inferences in his favor, Delta has failed to sufficiently eliminate all triable issues of fact as to whether the gap between the plane and the jet bridge was inherently dangerous.

Under New York law, "landowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition." *Tagle v. Jakob*, 97 N.Y.2d 165, 168 (2001). This duty does not extend, however, to protecting or warning against "an open and obvious condition which, as a matter of law, is not inherently dangerous." *Varon v. N.Y.C. Dep't of Educ.*, 998 N.Y.S.2d 433, 434 (2d Dep't 2014). "While the issue of whether a hazard is latent or open and obvious is generally fact-specific and thus usually a jury question . . . a court may determine that a risk was open and obvious as a matter of law when the established facts compel that conclusion . . . and may do so on the basis of clear and undisputed evidence." *Tagle*, 97 N.Y.2d 165 at 169. "Whether a hazard is open and obvious cannot be divorced from the surrounding circumstances." *Katz v. Westchester County Healthcare Corp.*, 917 N.Y.S.2d 896, 897 (2d Dep't 2011). Similarly, determining whether "a condition is not inherently dangerous . . . depends on the totality of the specific facts of each case." *Russo v. Home Goods, Inc.*, 990 N.Y.S.2d 95, 97 (2d Dep't 2014). Even if a condition is open and obvious, a landowner's failure to establish that the condition is not inherently dangerous requires a court to deny summary judgment. *See Chaney v. Starbucks Corp.*, 115 F. Supp. 3d 380, 387 (S.D.N.Y. 2015).

Delta has pointed to no evidence—much less any "clear" record evidence—that the gap between the jet bridge and plane was not inherently dangerous. Delta's argument boils down to two theories: planes are designed to maintain a gap between the body of the plane and the jet bridge

13

when properly aligned, and conditions on or near the floor are not inherently dangerous as a matter of law. *See* Reply at 10, Mot at 13–14.

First things first. Segarra's negligence claim is premised on his theory that the jet bridge and plane were *not* properly connected the day of the accident. The question therefore is not, as Delta postulates, whether every gap between an aircraft and a plane is an inherently dangerous condition, but whether the Court can determine that the gap between the plane and the jet bridge the day of Segarra's accident was inherently dangerous. On this record, the Court simply cannot do so. *See Niles v. 1109-1113 Manhattan Ave. Partners, LLC*, No. 13-CV-5427 (NGG)(VMS), 2015 WL 6674833, at *6 (E.D.N.Y. Oct. 30, 2015) (collecting cases where "New York courts have repeatedly found that summary judgment is not appropriate in cases where it was alleged that the placement of an object created a dangerous condition").

When "assessing inherent dangerousness, the Court may consider factors including the inherent nature of the condition at issue, evidence of prior accidents, whether there is a statutory violation, the frequency of inspections, photographs depicting the condition, and expert testimony." *Chaney*, 115 F. Supp. 3d at 386. Delta's decidedly minimalist summary judgment briefing does not touch on any of these factors. Delta elected not to point the Court to any record evidence about the size of the gap at issue, or any evidence that the jet bridge and plane were properly aligned the day of the accident.[9] It is the moving party's burden on summary judgment to show an absence of genuine

---

[9] The portions of testimony that Delta cites to in its Rule 56.1 Statement do not support the proposition that, on the day of the accident, the plane was parked in its designated space on the ground, or that the plane was properly aligned with the jet bridge. For example, Delta cites pages twenty-six through twenty-eight of Michael Luciano's deposition to support its assertion that after landing in Puerto Rico, "the plane was parked in a designated location based upon markings on the ground, which was in line with one of the airport's jet bridges." Rule 56.1 Statement, Dkt. No. 51-2, ¶ 18. But Luciano, a Delta safety manager, actually testified only about his general knowledge of Delta's standard operating procedure because, "I cannot give you a hundred percent assurance because I told you I wasn't there that day or I am not sure that I was there, but I can tell you the standards that we do every day[.]" Luciano Dep. at 26:10–16. Similarly, although Delta asserts that the record reveals that "[o]nce the plane was parked, the jet bridge was aligned with the plane's door," the cited page of Melissa Reid's testimony involves her response to the question, "in general, what are

factual dispute. Delta failed to do so in this aspect of their briefing as well.

Delta also cites four cases to support a nearly irrelevant principle—that "[c]ourts in New York routinely find that conditions on or near the floor are not inherently dangerous." Mot at 13. That is probably true. But it is also true that New York courts have often found the exact opposite; the Court's own research has turned up several cases where New York courts have found that unusual conditions on the floor could be inherently dangerous. *See, e.g.*, *Villano v. Strathmore Terrace Homeowners Ass'n,*, 908 N.Y.S.2d 124, 127 (2d Dep't 2010) (finding that defendants failed to establish a sprinkler head was not inherently dangerous even though plaintiff knew where it was because, on the day of the accident, the sprinkler had "failed to retract into the ground as it should have"); *Salomon v. Prainito*, 861 N.Y.S.2d 718, 719 (2d Dep't 2008) (a cylindrical pipe in its normal position—parallel to the walkway and running along its edge—would not be inherently dangerous, but the cylindrical pipe could be inherently dangerous when lying in the walkway).

Because Delta has not shown that the jet bridge's alignment was not, as a matter of law, inherently dangerous, the Court must deny Delta summary judgment.

## IV.     CONCLUSION

This is a case about Segarra's trip and fall. Delta's motion also tripped and fell—it failed to acknowledge governing choice of law principles, failed to grapple with the existence of disputed issues of material fact, and, as a result, failed to marshal the kind of facts that might have supported a favorable decision here. In sum, Delta's motion fundamentally failed to demonstrate that it was

---

the procedures when you land for a flight attendant?" Rule 56.1 Statement ¶ 19. Reid Dep. at 20:25−21:3. Generic testimony about standard operating procedures and practices does not establish that those practices were actually followed. Delta's failure here is particularly jarring considering that the Court's own research revealed other cases where courts have determined that properly placed jet bridges are not, as a matter of law, inherently dangerous. *See, e.g.*, *Rodriguez v. British Airways PLC*, No. 17-CV-03691 (BMC), 2017 WL 6372733, at *6 (E.D.N.Y. Dec. 12, 2017) (holding that a properly aligned jet bridge with a four-inch gap was not inherently dangerous).

entitled to judgment as a matter of law on the record presented to the Court. For these reasons, Defendant's motion for summary judgment is DENIED.

The Clerk of Court is directed to terminate the motion at Dkt. No. 51.

SO ORDERED.

Dated: June 12, 2020

                                              GREGORY H. WOODS
                                           United States District Judge